## DRAPER *v.* SNOW.

The principal contract cannot be read as a part of the guaranty, executed at the same time, upon the same paper, and to the same promisee, so as to sustain the guaranty under the statute of frauds, unless the latter refers expressly, or by clear implication, to the consideration expressed in the principal, as that of the collateral undertaking.

When, for aught that appears in the guaranty, its consideration may have been subsequent to or different from that of the principal contract, the latter is not available as expressing the consideration of the collateral agreement, nor can the defect be cured by averment and proof.

Upon a valid written contract, to pay for stock deliverable at a future day, signed by the buyer, the defendant, at the time, and as an express condition of the seller's making the bargain, indorsed: "I guaranty the within contract," *held* void as not expressing the consideration.

In order that two instruments, executed at the same time, in relation to the same subject matter, may be read together as one contract, they must be between the same parties; it is not sufficient that they are executed to the same party.　Per SELDEN, J.

The cases of *Union Bank* v. *Coster's Executors* (3 *Comst.*, 204); *Brown* v. *Curtis* (2 *Comst.*, 225), *and Brewster* v. *Silence* (4 *Seld.*, 207), reviewed distinguished and reconciled.

APPEAL from the Superior Court of the city of New York. The complaint was that on the 3d day of April, 1854, the plaintiff entered into a contract with one Hazewell, of which this is the counterpart:

NEW YORK, *April* 3, 1854.

350 shares PENN. ZINC, 3⅜, B 60.

I have purchased of Theodore S. Draper three hundred and fifty shares of the stock of the Pennsylvania and Lehigh Zinc Company, at three and three-eighths dollars per share, payable and deliverable—buyer's option—in sixty days, with interest at the rate of six per cent per annum.

GEORGE R. HAZEWELL.

That before entering into the contract with Hazewell, and as an express condition thereof, the plaintiff required from the

defendant his guaranty of the performance by Hazewell of the different stipulations on the part of Hazewell contained therein: that thereupon, at the time of making the contract, the defendant indorsed thereupon his guaranty in these words, "I guaranty the within contract, Geo. M. Snow:" that thereupon in consideration of the giving of said guaranty and not otherwise, and within the time limited in the contract, the plaintiff delivered to Hazewell the three hundred and fifty shares of stock, for which neither Hazewell nor the defendant have paid.

The defendant demurred, assigning for cause that the complaint set forth a collateral agreement to answer for the default of another, which had no consideration expressed therein. At a special term, held before the late Mr. Justice OAKLEY, the demurrer was overruled. Upon appeal by the defendant, the order was reversed at general term, and judgment entered for the defendant; the plaintiff appealed to this court.

*William H. Scott,* for the appellant.

*H. B. Cowles,* for the respondent.

SELDEN, J. Although the complaint in this case avers that the guaranty was executed at the same time with the principal contract, yet if it appear from the complaint itself that the averment is one which could not by possibility be supported upon a trial, the plaintiff cannot avail himself of it upon demurrer. The contract and guaranty are both set forth. If from these it appears, either expressly or by inference, that they were executed at the same time, or if the plaintiff could be permitted upon a trial to prove their simultaneous execution by parol, the averment is available to the plaintiff; otherwise not. It becomes necessary, therefore, to consider these questions.

The guaranty is written at the foot of the contract, upon the same paper; the principal contract being dated, but the guaranty without any separate date. Under these circumstances a presumption may arise, in the absence of all proof to the contrary, that the contract and guaranty were both executed at the

same time, especially where, as in this case, the consideration **of** the principal contract is executory: but I will not dwell upon this point, as I entertain no doubt, that it would be entirely competent for the plaintiff, upon a trial, to prove by parol that the papers were simultaneously executed. Whenever the time of the execution of any writing, even of the most solemn kind, becomes material, it may be proved by parol; not merely to supply an omission, where the paper itself is without date, but in opposition to the date, where it contains one. The time when a contract is executed is no more a part of the contract than the place where it is executed. Both belong to that class of attending and surrounding circumstances which may always be resorted to for assistance in explaining and applying the terms of the contract.

This rule applies to contracts required by the statute of frauds to be in writing, no less than to all other contracts. That statute abrogates none of the rules of the common law, except such as are necessarily in conflict with it. Judge COW-EN, speaking on this subject, in *Douglass* v. *Howland* (24 *Wend.*, 35), says: "Some of the most difficult cases on the rule respecting the *ambiguitas latens* of written contracts, have arisen on these guarantees. You are to see what they mean in such cases, by looking to collateral facts or surrounding circumstances. You do this in order to sustain the most solemn contracts, such as deeds or wills."

Many other authorities might be cited to the same effect, but it is unnecessary, as I deem the point too plain to admit of serious question.

There is no doubt that the principal contract in this case expresses the consideration with sufficient clearness; and we are to assume upon this demurrer that the guaranty was executed at the same time with it. The case presents, therefore, in the most unmixed form, the question whether, under such circumstances, the consideration expressed in the principal contract can be read as a part of the contract of guaranty, so as to remove the objection arising under the statute of frauds, which requires not only that the guaranty should be **in**

writing, but that the writing should express the consideration of such guaranty. (2 *R. S.*, 135, § 2.)

There have been several decisions of this court since its organization which bear upon this question; and it will scarcely be necessary to go beyond these decisions in considering the present case. The plaintiff's counsel, to maintain that the guaranty does express the consideration, insists in his printed points that the principal contract and the guaranty, having been executed at the same time, to the same party, and in relation to the same subject matter, should "be deemed to have been parts of the same transaction;" and that "the two instruments may be read together *as one contract.*"

The rule here invoked is a familiar one; but three things are essential to its application, viz: The contracts must be executed at the same time, they must relate to the same matter and must be between the same parties. It is by no means sufficient, as the counsel has assumed, that they should be executed to the same party. A single familiar illustration will sufficiently test this, and show the importance of the distinction. Suppose two insurance companies were to execute separate policies at the same time, upon the same property, and to the same person, it would scarcely be claimed that the two could be read together as one contract; and yet the case would embrace every element which the counsel, as it would seem from his point, deems essential to that result. The two contracts would be executed at the same time, to the same party, and in relation to the same subject matter.

In the present case, Hazewell, the principal, and Snow, the guarantor, have both made contracts with the plaintiff, at the same time, and relating to the same subject; but Snow is not a party to Hazewell's contract, nor Hazewell to that of Snow; nor are the two contracts identical in substance. Hazewell agrees to purchase certain stocks, and that he himself will pay. Snow agrees neither to purchase nor pay, but that Hazewell shall do both. Hazewell is liable primarily, Snow only in case of his default. The contracts, therefore, are plainly separate and distinct, and cannot be read together as one. To a certain

extent, no doubt, the principal contract may be read in connection with and as a part of the guaranty. The latter impliedly refers to the former, for a statement of what the guarantor undertakes that the principal shall do. But this implication clearly does not extend to the consideration. That may be the same, or it may be other and different. There can be no presumption in this case that it is the same; and even if there could, that would not satisfy the statute, which requires the consideration to be expressed in the guaranty.

The plaintiff's counsel relies mainly upon the case of *Union Bank* v. *Coster's Executors* (3 *Comst.*, 204), to support his position. But the decision in that case, does not necessarily rest, and cannot, I think, be sustained, upon the doctrine that different instruments made at the same time, in respect to the same matter, are to be read and construed together; because there as here, one essential circumstance was wanting, viz.: an identity of parties. The primary contract in that case and in this, are very much alike in respect to the consideration, which is executory in both. But the guarantees are very different. In the case of Coster it was as follows: "I hereby guaranty the due acceptance and payment of any draft, *issued in pursuance of the above credit.*"

It would be difficult to make two guarantees more unlike in frame and structure than the two under consideration. The guaranty in the present case is entirely silent as to the things guaranteed to be done ; that in the Coster case contains a pretty full recital of what is guaranteed. Again, the former contains no reference, express or implied, to the consideration of the original contract, or to a consideration of any sort, while the latter may .be construed as expressly referring to the consideration of the principal contract. The words, "in pursuance of the above credit," upon one construction, it is true, might be said to be merely descriptive of the paper guaranteed. But they may, when taken in connection with the form of the instrument and the attending circumstances, be held to mean something more. What is the "above credit" referred to? It is not for all drafts drawn by Kohn, Daron & Co., but such only as should

be "negotiated through," that is, taken and discounted by the persons to whom the instrument is addressed. The paper is in the form of a letter, which is to be regarded as addressed to the plaintiff. The presumption is, from the form of the instrument, and the nature of the transaction, that there had been no negotiation between the plaintiff and the guarantor, before the presentment of the letter to the plaintiff. The guaranty was obviously made with a view to such presentment. Does it not then in effect say to the plaintiff, that any drafts drawn as described, which it will consent to take, shall be duly accepted and paid, thus referring to and adopting the consideration of the original contract, viz., the taking and discounting of the drafts, as the consideration of the guaranty? There is an obvious distinction between the principal contracts in the two cases, which materially affect the construction of the guarantees. In the present case, the instrument is a mere embodiment in writing, of what had been previously agreed upon between the parties. Its language is: "I have purchased," &c. There could be no purchase without a sale; and hence, the plaintiff must have agreed to sell the stock to Hazewell before the guaranty was executed; and for aught that appears, before any agreement to execute it. In the case of Coster, on the other hand, it is manifest from the nature of the transaction, that the original credit must have been given after the execution and presentment of the guarantee, and presumptively in reliance upon it; and hence, that the consideration of the guaranty was identical with that of the principal contract.

There is ,in the present case, by no means the same ground for a presumption, if that could make any difference, that the credit was originally given upon the faith of the guaranty, and that this credit was contemplated as the consideration of such guaranty, as in the case of *Coster's Executors.* The plaintiff can not avail himself of the averment to that effect in the complaint; because, as we have seen, it cannot be inferred from the face of the guaranty, taken in connection with the circumstance that it was executed at the same time with the primary contract; and there is therefore no way in which the fact could

be made to appear upon a trial, as it clearly could not be proved by parol. For all these reasons, the difference between the two cases is marked and clear.

The case of *Coster's Executors*, in the view which has been taken of it here, is not at all in conflict with the case of *Brewster* v. *Silence* (4 *Seld.*, 207), in which the very question now presented was decided by a nearly unanimous vote, in opposition to the views maintained by the plaintiff's counsel here. There may be reason to apprehend that the rule adopted in the latter case will in its practical operation be productive of some inconvenience; as it will not be easy to impress upon the community at large the necessity of observing that rule in their ordinary transactions. It was probably some consideration of this sort which led the late Supreme Court of this State to go to the extraordinary length of holding that one who guarantied the payment of a promissory note was liable as a maker of the note thus guarantied. (*Manrow* v. *Durham*, 3 *Hill*, 584; *Luqueer* v. *Prosser*, 4 *id.*, 420.)

But these cases, which, as has been justly said, stand upon no basis of principle, have been repeatedly overruled, and especially in the case of *Brewster* v. *Silence* (*supra*). The plaintiff's counsel assumes that the case of *Brewster* v. *Silence* was decided solely upon the authority of that of *Hall* v. *Farmer* (2 *Comst.*, 553), which, as he insists, settled no principle. It is true that in the case of *Hall* v. *Farmer* there was no authoritative decision of the court; the judgment having been affirmed by force of the statute alone, upon the third argument, for want of a concurrence by any five of the judges as to the judgment to be pronounced. But the decision in the case of *Brewster* v. *Silence*, was not based upon that case alone, but upon a process of reasoning to which I have not been able to discover any satisfactory answer. WILLARD, J., by whom the opinion of the court was delivered, says: "The note and guaranty are not one and the same thing. The note is the debt of the maker. The guaranty is the engagement of the defendant that the maker shall pay the note when it becomes due. A joint action will not lie against them both. They

are not the same but different and distinct contracts. **If we give effect to the statute, we must treat the guaranty as void,** for want of expressing on its face the consideration." Although it expressly appeared in that case that the consideration of the note was the sale of a pair of horses, and that the giving of the guaranty was made a condition of the sale, I nevertheless fully concur in the decision, as facts of that description can have no influence upon the question, except where, as in the case of *Coster's Executors*, they may have a bearing upon the construction to be put upon the terms of the guaranty. Neither the conclusion arrived at in this case, nor the decision in the case of *Brewster* v. *Silence*, is necessarily in conflict with any of the previous cases decided by this court. The case of *Brown* v. *Curtis* (2 *Comst.*, 225), was put upon the ground, not that the statute had been complied with, but that the contract did not come within the provisions of the statute, and need not have been in writing at all.

The judgment of the Superior Court, therefore, should be affirmed.

All the judges concurred except Strong, J.

S. B. Strong, J. (Dissenting.) Irrespective of the decision of this court in the case of *Brewster* v. *Silence* (4 *Seld.*, 207), I should have no hesitation in adopting the conclusion that the defendant in this action was held by his guaranty. How far the opinion expressed in that case will have a tendency to relieve him from the performance of his engagement, or his liability under it, will be hereafter considered. There can be no doubt but that the promise of the guarantor was as a surety, and it has been well and properly settled that the obligations of one assumed for another, are *strictissimi juris*. The surety is held to perform what he has actually and not presumptively promised to do, and upon the conditions (if any) expressed in his undertaking. But in proving and ascertaining what his actual engagement is, the rules of law generally applicable must prevail. It was well remarked by Judge Pratt, in the case of

the *Union Bank* v. *Coster's Executors* (3 *Comst.*, 203—209), that "in other respects" (than the statutory requisitions that the promise and condition should be expressed in writing), "the same rules of construction and evidence apply to contracts of this character, which apply to other ordinary contracts." The statute (2 *R. S.*, 135, § 2) simply avoids the subsidiary engagement, unless such agreement or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged therewith. The requisition is satisfied when the promise and the consideration can be ascertained by the writings signed by the surety, without a resort to parol evidence. If a resort must be had to such evidence, in order to ascertain either, then, if that should be tolerated, the same serious dangers which the Legislature intended to prevent would be encountered. If, then, we consider only what is in writing in this case, and give to that its fair and reasonable interpretation, does it indicate all which the statute requires? The promise is clearly expressed in the indorsement. In that, the defendant substantially engaged that his principal should perform his contract. The principal (Hazewell) had contracted with the plaintiff to accept and pay for the shares of stock at the specified rates—buyer's option—in sixty days. Hazewell had accepted the stock which had been duly transferred to him, but had not paid for it within the stipulated time. It was contended by the defendant, that the receipt of the stock and the payment of the purchase money were to be simultaneous, and were, in effect, to constitute a single transaction, and that the guaranty did not extend to the payment if the two acts should be severed; and it was insisted that the plaintiff, by transferring the stock without exacting the payment therefor, would materially increase the risk of the defendant, if his engagement should still be continued. The risk was undoubtedly increased, but that does not relieve the defendant if he engaged that his principal should both receive and pay for the stock. A promise for the performance of an entire act is broken by the non-performance of a part of it. If the plaintiff had made a valid agreement with Haze-

well, to allow him a credit beyond the sixty days specified in the contract, that might have relieved the surety upon another principle; but it does not appear that there was an agreement to extend the time of payment for any period, or that the payment should be postponed at all after the transfer was made. If the defendant was at all bound it was as well for the payment of the purchase money as for the acceptance of the stock.

If the defendant could be considered as having signed the indorsement alone, then he would not be held, as that does not express any consideration. There is no separate date to the guaranty, and from that fact, and the nature of the transaction, fairly inferable from what is written, the two papers must have been made at the same time. The plaintiff, if he required security at all, would naturally do so when the contract was executed and delivered. It would follow, as was remarked by Judge PRATT, in the case of the *Union Bank* v. *Coster's Executors*, that the guaranty should, within any rule of construction, be deemed part of the same transaction (with the principal agreement) and the two instruments should be read together as one contract." In the case of *Brown* v. *Curtis* (2 *Comst.*, 225–233), I remarked, and, as I then understood, with the concurrence of five of my brethren, that "If the principal contract and the guaranty are both on the same piece of paper, and written at the same time, they are considered as one transaction, and the signature of the guarantor is deemed a subscription by him not only to the guaranty, but also to the acknowledgment of the consideration expressed in the note (principal contract), and both taken together are therefore considered as a compliance with the statute." Applying this rule to the case under consideration—and, unless we intend to overrule *Brown* v. *Curtis*, *The Union Bank* v. *Coster's Executors* in this court, and many cases in other courts, we must do so—and the two papers will read as follows: "In consideration that Theodore S. Draper now sells and agrees to deliver to George B. Hazewell, three hundred and fifty shares of the stock of the Pennsylvania and Lehigh Zinc Company, at buyer's option, in sixty days, at three and three-eighths dollars per share, I, the said George B.

Hazewell, agree to accept and pay for the same, with interest at the rate of six per cent per annum; and I, George M Snow, guaranty that the said George B. Hazewell, shall so accept and pay for the same." The considerations are present and future. The sale was made at the time, and the transfer was to be made within the following sixty days. It was said in the case of the *Union Bank* v. *Coster's Executors*, that "there is a wide difference between the guaranty of an existing debt, and the guaranty of a debt to be contracted upon the credit of the guaranty. It is the difference between the past and a future consideration. A past consideration, without any participation or request of the promiser, is not sufficient to support any promise. But a promise to do an act in consideration of some act to be done by the promisee implies a request, and a compliance on the part of the latter closes the contract, and makes it binding." The judge who gave the opinion of the court below in this case, remarked, that a stranger looking at the whole instrument, and to that only, could not know whether the guaranty was an inducement to sell the stock, and was a constituent part of the consideration for his contract to sell and deliver, or whether some special consideration was paid to Snow for making it, or whether in fact it was made without any consideration. Now, it is not the question, what a stranger to the transaction would know to an absolute certainty to be the consideration for an engagement, simply from an inspection of the instrument; but the inquiry is, whether the terms of the instrument do not fairly import a specified and sufficient consideration. On looking at the instrument in question, can there be a reasonable doubt as to what was the consideration of the defendant's agreement, any more than in the case of the *Union Bank* v. *Coster's Executors?* Clearly it was, that the plaintiff agreed to, and would subsequently deliver to the purchaser the stock in question at the specified rate. The papers speak that language, and nothing else. It is not the rule, nor does the law or common sense require, that we should speculate as to possibilities in the construction of an instrument, when that has a fair and reasonable meaning, and

especially when in doing so, we should overrule the principle *ut res magis valeat quam pereat.* Upon the authority of the case of the *Union Bank* v. *Coster's Executors,* and of nearly every case upon the same subject antecedent to it, I should be inclined to sustain this action, unless we are coerced to a contrary course by the decision of this court in *Brewster* v. *Silence.* The judge who gave the opinion in that case, relied most upon the authority of the decision of this court in *Hall* v. *Farmer* (2 *Comst.,* 553). But the note upon which the guaranty was given in that case, was for a past consideration, in which the surety had no participation; and one of the four judges who decided that case concurred with the other three, on the ground that the contract of the guarantor was upheld by no consideration in fact. He said that he thought, that a collateral promise by a third party to pay a preëxisting debt, for which he was in nowise liable, and where no new credit was given, could not be sustained without some other consideration which did not appear in that case. The same learned judge, however, had agreed with three of his associates in the next preceding case, *Durham* v. *Manrow* (2 *Comst.,* 533), that an engagement upon the back of a promissory note, in the following words, "we guaranty the payment of the within note," was valid. In that case the note was given for a horse purchased at the time, and together with the guaranty was executed at the time of the sale. The two papers constituted a single transaction, and were considered together; and it was decided, that the consideration specified in the note applied to and upheld the guaranty. It seems to have been the opinion of the court, in *Brewster* v. *Silence,* that parol evidence of the attendant circumstances could not be adduced for the purpose of showing the nature of the consideration, but that the writings must speak for themselves. Judge WILLARD thought, that if the words, "for value received," had been inserted in the guaranty, they would have sufficiently indicated the requisite consideration. They would then have constituted an acknowledgment that the guarantor had received value to induce him to enter into his engagement, and in that event it would have been imma-

Draper *v.* Snow.

terial whether the consideration was past or present, or in what it consisted. This court did not probably intend, in that case, to overrule the principle that when the principal and secondary contracts are upon the same piece of paper, and were executed simultaneously by the same or connected parties, the consideration expressed upon the note may be applied to the guaranty. It is not to be presumed that a court of dernier resort disregarded its own repeated decisions, supported as they were by numerous adjudications of other respectable tribunals. I am inclined to think, that although it was supposed that a direct acknowledgment by the guarantor, that he had received value, would bind him, yet it was concluded that a written admission in effect by him, that his principal had received such value, did not sufficiently indicate a consideration connected with him to satisfy the requisition of the statute. When a valid consideration is received by the principal, at the time when another becomes his surety, it may well be inferred, that it is at the request of both; and as to the consequent obligation, it is immaterial whether the consideration is received by the surety or by his principal upon his request. But the words, "for value received," in the body of a note, do not clearly indicate that it is a present consideration, and therefore it is not necessarily inferable from them that it was one affecting the surety, or in which he at all participated. There is undoubtedly, as was said by one of my brethren at the close of the argument, a manifest distinction between a consideration mentioned in general terms, and one specifically defined. The statute, by preferring the definite article "the," may be so construed as to require the specification in referring to a consideration received by another, and not by the surety himself. If this court has not overruled the decision in the *Union Bank* v. *Coster's Executors*, that case, so far as it relates to the expression of a consideration in writing, is similar to the present one, and the defendant is legally bound to perform his engagement.

The judgment should be reversed, and there should be a new trial, the costs to abide the event of the suit.

Judgment affirmed.