**·Harry Reid GASKINS, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 5010.**

District of Columbia Court of Appeals.

Argued Oct. 6, 1969.

Decided March 6, 1970.

Leo M. Romero, Washington, D. C., appointed by this court, for appellant.

Harvey S. Price, Roger E. Zuckerman, Asst. U. S. Attys., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and Herbert B. Hoffman, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and FICKLING and GALLAGHER, Associate Judges.

---

GALLAGHER, Associate Judge.

Appellant challenges the denial of his motion to suppress a pistol taken from him, allegedly in violation of his fourth amendment rights. The pistol was introduced into evidence at his non-jury trial, after which he was convicted of a violation of D. C.Code 1967, § 22–3204, carrying a pistol without a license.

At a pre-trial hearing on the motion to suppress the following facts were revealed. One Officer Madding testified that at about 9:05 p. m. on March 25, 1969, he and his partner were cruising the area of 6th and G Streets, N.W. As they proceeded east on G Street, a taxicab driver coming from the opposite direction hailed them and said: "I just saw a guy up the street tuck a gun inside his belt." The cabdriver pointed to three men walking south on 6th Street towards G Street, and the officer noted that the street was otherwise empty. The cabdriver did not say which of the men he had seen with the gun.

After driving up to the three men and stopping them, Officer Madding searched appellant and found a .25 caliber automatic pistol in his left coat pocket. Prior to stopping the three subjects, the officer had not seen the gun. His partner and two foot patrolmen who were in the area searched the other two men and seized a knife from one and narcotics paraphernalia from the other. All three were arrested.

Appellant took the stand, denied having removed the gun from his coat while on the street, and stated that it had been in his right coat pocket all the time. He testified that one of his two companions was a white man, the other a Negro, his nephew. The pre-trial judge denied the motion to suppress.

We think the trial judge was correct in denying the motion to suppress. A police officer's actions are not to be judged from "[the] remote vantage point of a library * * *." Jackson v. United States, 112 U.S.App.D.C. 260, 262, 302 F.2d 194, 196 (1962). We must answer these questions: "[u]nder the sum total of circumstances at the moment, (1) what was a reasonably prudent police officer entitled to believe, and (2) upon the basis of his belief what was he to do?" Dixon v. United States, 111 U.S.App.D.C. 305, 306, 296 F.2d 427, 428 (1961).

It is clear that Officer Madding was entitled to rely upon the information imparted to him by the cabdriver, an *eyewitness* to the crime, "[w]ho it [seemed] reasonable to believe [was] telling the truth." Daniels v. United States, 129 U.S.App.D.C. 250, 252, 393 F.2d 359, 361 (1968). That information, coupled with the fact that no other group of three men was walking down the street, reasonably required him to take some action, although he was not told by the passing cabdriver which one of the three had the gun. Under the circumstances, we think the course taken was reasonable.

There were but two courses open: (a) let the three pass in the night because he was not told which one of the three had a gun and therefore may have lacked legal authority to search any of them, or (b) stop the three and determine which, if any, was carrying a weapon. The latter course was taken.[1] In stopping the three the police were not required to confine their efforts to interrogation in order to ascertain the answer to the crucial question. Based on the information they had, there was only one realistic way to proceed and that was the usual method of "frisking" or, if a bulge were noticed, of seizing the gun.[2]

---

1. Under D.C.Code 1967, § 23–306, an arrest may be made upon probable cause for unlawful possession of a pistol.

2. The record is not specific on what transpired on the search, that is, as to whether he frisked and then took the gun from

"As a society, we routinely expect police officers to risk their lives in apprehending dangerous people. We should not bicker if in bringing potentially dangerous situations under control they issue commands and take precautions which reasonable men are warranted in taking." Bailey v. United States, 128 U.S.App.D.C. 354, 364, 389 F.2d 305, 315 (1967) (Leventhal, J., concurring).

A forcible stop of the three was warranted and the necessity to frisk appellant (and the other two) for a weapon was immediate if the stop was to have meaning. Ques- the pocket or seeing a bulge seized it without the usual frisk. But we do not view this as controlling here as the normal, and safest, police procedure is to tions leading toward a frisk might have brought a shooting. In these circumstances, "[i]t would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." Terry v. Ohio, 392 U.S. 1, 24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968).

We conclude the motion to suppress the evidence was properly denied.

Affirmed.

frisk first so as to locate the gun quickly if it is there. If, on the other hand, he saw a gun bulge, he would be warranted in seizing it.