**UNITED STATES, Appellant,**

**v.**

**Randolph Woodrow FRYE, Appellee.**

**No. 5341.**

District of Columbia Court of Appeals.

Argued Sept. 29, 1970.

Decided Dec. 22, 1970.

Charles H. Roistacher, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and Percy H. Russell, Jr., Asst. U. S. Attys., were on the brief, for appellant.

Eric R. Fox, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and KELLY and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge:

This is an appeal by the Government from the grant of a motion to suppress evidence. Appellee was charged by information with carrying a pistol without a license,[1] and a motion to suppress the gun was initially denied after an evidentiary hearing.

Appellee's case was certified to another judge for trial and at that time he attempted to relitigate the motion to suppress but was not permitted to do so. But after considering appellee's (defendant's) reasons for rehearing the motion to suppress, the trial judge permitted him to file a motion for rehearing before the previous motions judge. It is evident from the record that counsel for appellee had informed the trial court that appellee intended to plead guilty if he were unsuccessful on his motion to suppress the seized pistol. The trial judge suggested that if, upon rehearing, the motions judge changed his decision on the motion to suppress he would set aside his plea of guilty. This suggestion was adopted by appellee and he thereupon pleaded guilty to the charge of carrying a pistol without a license and sentence was withheld.

A motion for rehearing was granted by the same motions judge and argument was held, based upon the prior testimony of appellee, his companion, and an arresting officer. The officer had testified at the first hearing that on March 5, 1970, while parked with another officer in front of No. 2 Precinct, an unidentified citizen pulled alongside their car and said he had observed a late model Cadillac bearing District of Columbia license tags 760–795 being loaded with shotguns and rifles by six men near First Place, N.E. The citizen said he would follow and meet the officers there. The officer and his companion proceeded to the area and did not record the citizen's name or license plate number. The latter followed them as they left the Precinct but did not continue to do so. Upon arriving at North Capitol and M Streets, the officer saw the Cadillac in a parking lot. The license plates matched the number given by the unidentified citizen. He further testified that two males were in the car and two were within a few feet of the car walking away from it. As the car pulled out of the lot the officers followed in their car and requested a "stolen check" from the police radio dispatcher. Several minutes later the dispatcher informed them that the tags belonged to a different vehicle.[2] The officers then stopped the car. The officer testified that at this point he approached the passenger side of the car and asked appellee to get out of the car, which he did, and then advised him that they had received information the car was loaded with shotguns and rifles and that he going to frisk him.[3] While frisking appellee he felt "something like a gun", reached under his coat and found a loaded 9 millimeter Browning automatic pistol. Appellee said he had no license to carry the gun and was then placed under arrest. No rifles or shotguns were discovered in the car.

Upon rehearing, the motions judge reversed his prior ruling and granted the motion to suppress. The Government (appellant) makes two contentions here. First, it contends that the motions judge lacked jurisdiction to rehear appellee's motion to suppress the gun because the guilty plea

---

1. D.C.Code 1967, § 22–3204.

2. It later developed at the hearing on the Motion to Reconsider the Motion to Suppress that the tags were on the right car. The tags had been properly transferred to the car but this had not yet been recorded.

3. Appellee, however, testified that the officer proferred no reason for the frisk. Appellee also testified that the officer forced him out of the car at gunpoint. The officer testified that his service revolver was not drawn when he approached the car.

foreclosed any future contest as to the admissibility of the evidence. It also contends that, in any event, the motions judge erred on the merits in granting the motion to suppress the gun because the information from the citizen coupled with information revealed by the "stolen check" on the car justified its seizure after a "stop and frisk" under the authority of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Ordinarily, the question of the correctness of the decision on a motion to suppress does not survive the guilty plea. United States v. Ford, 363 F.2d 375 (4th Cir. 1966); Vasquez v. United States, 279 F.2d 34 (9th Cir. 1960); United States v. Sturm, 180 F.2d 413 (7th Cir.), cert. denied, 339 U.S. 986, 70 S.Ct. 1008, 94 L.Ed. 1388 (1950). In this instance, however, it would appear appellee's counsel did no more than follow a procedure suggested by the trial court itself, as it offered to set aside the guilty plea if the motions judge changed his ruling. Under these circumstances it would hardly be just to penalize appellee for following the trial court's suggested mode of disposing of the case. In fact, there would be a considerable question as to whether the guilty plea, in light of the trial court's suggestion, was voluntarily and knowingly made. See McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); G.S. Crim. Rule 11. Under these particular circumstances, the question of the correctness of the decision on the first motion to suppress survived the guilty plea, which was later set aside after the motion was granted.

This leaves for consideration the fourth amendment issue. Appellee contends, principally, that the search of appellee was illegal because there was no probable cause to arrest when the car was stopped. He leans heavily on the fact that the citizen giving the initial information to the police is unidentified in the record.[4] We think it is unnecessary to reach this question as we conclude there was justification for a "stop and frisk", as authorized by Terry v. Ohio, *supra*.

We have here another of those moving street scenes where quick, reasonable action by the police is necessary else events will pass them by with the result, perhaps, of another crime committed which could have been prevented or solved. When the unidentified citizen reported to the police an incident of this nature then taking place nearby, the police would have been derelict if they had not proceeded to the scene to investigate. When they there observed the car fitting the description it was reasonable to follow as it left the parking lot and relay to the police dispatcher the number of the license plates to see what that would bring. When this resulted in information, however mistaken it later turned out to be,[5] that the tags did not belong on the car being pursued the police were justified in stopping the car. At this point, bearing in mind the information they had previously obtained from the citizen, it was prudent, for their safety, to frisk the occupants before questioning them. This action by the police was within the rationale of Terry v. Ohio, *supra*.[6]

This is certainly not to say that a "frisk" is warranted in all cases where traffic regulations appear to be violated. United States v. Robinson, U.S.App.D.C., (No. 23,734, decided December 3, 1970). But here the aggregate of the information the police had obtained warranted the "stop" of the car and the "frisk" of the occupants, and the arrest of appellee when a loaded pistol was found in his possession. Consequently, we hold it was error to

---

4. Appellee also contends that even if there was a right to investigate there was no right to frisk appellee, who was not driving the car. We disagree for reasons which will appear.

5. *See* note 2, *supra*.

6. *See also* Gaskins v. United States, D.C. App., 262 A.2d 810 (1970).

grant the motion to suppress the pistol seized.

We might say, in passing, that this is at least the fourth of recent cases where information obtained by the police from unidentified citizens has been at the root of a search on the street with an arrest resulting.[7] We are aware, as we have frequently said,[8] that in these troubled times in urban centers the police must frequently react quickly in these moving street encounters lest they lose the opportunity to do so. Moreover, we have no intention of attempting to throttle them in the reasonable pursuit of their unpleasant and dangerous duties. We do want to stress, however, that where it is at all practicable a few moments should be taken to secure the name and address (or license number) of a citizen giving information on the street, such as in this case, of a crime or one in the making. If this had been done, we might well not have this appeal, and this consideration could be multiplied.

We are hopeful that the police in this jurisdiction will be alert to this problem and make every reasonable effort commensurate with the circumstances to obtain and record the identity of their informants in these moving street scenes. In many cases, it would appear this could be done in a matter of seconds. This will enable them to locate and identify later the person who gave the information, and thereby go far to remove from subsequent prosecutions the troublesome factors of the unknown and unidentified and uncorroborated informant. *See, e. g.,* People v. Taggart, 20 N.Y. 335, 343, 283 N.Y.S.2d 1, 9, 229 N.E. 2d 581, 587 (1967).[9] In other words, it would strengthen the law enforcement effort.

Reversed and remanded for further proceedings.

7. For the others, *see, e. g.,* United States v. Dowling, D.C.App., 271 A.2d 406 decided December 3, 1970); Gaskins v. United States, D.C.App., 262 A.2d 810 (1970); Clarke v. United States, D.C. App., 256 A.2d 782 (1969).

8. *See, e. g.,* Gaskins v. United States, *supra* note 7; Clarke v. United States, *supra* note 7.

9. There, the Court of Appeals of New York, while affirming in a case similar to this one, showed a marked concern about this problem, as do we.