**Eugene D. MURPHY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 6226.**

District of Columbia Court of Appeals.

Argued June 21, 1972.

Decided Aug. 10, 1972.

Thomas W. Farquhar, Washington, D. C., with whom Albert J. Ahern, Jr., Washington, D. C., was on the brief, for appellant.

John J. Mulrooney, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, Thomas H. Queen and Robert P. Watkins, Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING, REILLY and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

This appeal is from a conviction, after a trial without a jury, on a charge of carrying a pistol without a license.[1] Appellant assigned as error the court's refusal to grant his Motion to Suppress and the similar ruling entered by the trial judge seven months later when appellant renewed his motion before trial.

At the hearings on the two motions the arresting officer testified that while patrolling in his car on the evening of February 4, 1971, he received a radio run about 9:04 p. m., advising him that there was a man with a gun at the Good Guys Restaurant at 2311 Wisconsin Avenue, N.W. In substance the radio run described the suspect

---

1. D.C.Code 1967, § 22–3204 (Supp. IV, 1971).

as a white male, 40 years old, 6'1". tall, having a dark complexion, dark hair, and wearing dark clothing and dark rimmed glasses. It went on to say the suspect would be seated at the third booth at the right "as soon as you walk in the door" and that he went by the name of Murphy.[2]

When the officer entered the restaurant he saw the appellant, who was sitting at the third table on the right with his back against the wall, and immediately concluded he was the man described in the radio run.

He then proceeded to the rear of the restaurant where he asked the owner if he had called the police, to which the owner replied that he had not. The officer testified that when he first walked past appellant he had noticed that his trench coat was crumpled so that there was a slight bulge on his left side. As he accosted the appellant he put his service revolver in appellant's side warning him not to move. The officer did not frisk appellant as he could see the bulge of the gun from where he was standing. He simply reached under appellant's coat on his left side and removed the gun.

Appellant's testimony did not differ in any material respects from that of the officer. However, of particular significance was appellant's testimony that the officer inquired of him, "Your name Murphy?" and that he replied, "Yes." The taking of the gun by the officer followed.

Since the radio run reported a man with a gun who was described with considerable particularity and said to be seated in a certain part of a named restaurant, the officer was duty bound to investigate further.[3] When his investigation revealed a man matching the description given in the radio run, and sitting in the particular area of the restaurant mentioned, he had ample corroboration of the informant's tip to confront the suspect.

We cannot agree that such police action was unreasonable but rather suggest that except for the vulgar language used by the officer in making the arrest, it is the type of careful investigation of an anonymous tip prior to taking definitive action that makes for good police work, provides protection to the public, fairness to the accused and necessarily elicits our approval.

An arrest and search based on an anonymous tip has previously been upheld in this jurisdiction where the police first corroborated much of the information received from the informant before making the arrest. Davis v. United States, D.C.App., 284 A.2d 459 (1971); Carter v. United States, D.C.App., 244 A.2d 483 (1968).

Similarly, in the case at bar, the officer did not take definitive action until after he had corroborated nearly all of the information from the radio run and attempted to obtain further information from the restaurant owner. As in the *Davis* and *Carter* cases, it was not thereafter unreasonable for him to conclude that the report was trustworthy. We also find that the procedure followed by the officer of promptly seizing the gun was proper under the circumstances.

In the case of Gaskins v. United States, D.C.App., 262 A.2d 810 (1970), the police had been told by a cabdriver that one of three men walking up the street had tucked a gun in his belt but he could not specify which one. After stopping the men, the police found the gun when they searched Gaskins. The court said, "Based on the information they had, there was only one realistic way to proceed and that was the usual method of 'frisking' or, if a bulge were noticed, of seizing the gun." (Footnote omitted.) 262 A.2d at 811.

The Supreme Court in a very recent case where a known informant had reported that a man seated in a parked car was carrying

---

2. Although the original source of the information was not known to the officer, he might reasonably have inferred that it came from an eyewitness.

3. Davis v. United States, D.C.App., 284 A. 2d 459 (1971); United States v. Frye, D.C.App., 271 A.2d 788 (1970).

a gun in his belt, approved the procedure followed by the officer of reaching in, when the subject lowered the window, and removing the gun from his waistband. Adams, Warden v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.E.2d 612 (June 12, 1972).

The trial court properly overruled appellant's motions to suppress.

Affirmed.