**Robert W. JEFFREYS, Jr.,**
**and**
**Charles Thrower, Appellants,**

v.

**UNITED STATES, Appellee.**

**Nos. 6254 and 6255.**

District of Columbia Court of Appeals.

Argued June 20, 1972.

Decided Dec. 3, 1973.
Rehearing en Banc Denied in No. 6255
Jan. 28, 1974.

---

Robert Case Liotta, Washington, D. C., appointed by this court, for appellant in No. 6254.

Mary Lee Garfield, Washington, D. C., appointed by this court, for appellant in No. 6255.

William E. Reukauf, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and William J. Hardy, Asst. U. S. Attys., were on the briefs, for appellee.

Before REILLY, Chief Judge, and NEBEKER and PAIR, Associate Judges.

REILLY, Chief Judge:

These appeals are from one-year sentences imposed for the offense of carrying pistols without a license (D.C.Code 1973, § 22–3204), resulting from jury verdicts of guilty against both appellants. Motions to suppress these pistols as evidence were made prior to trial and the only issues presented by appellants are directed at the refusal of the court to order suppression.

At the pretrial hearing on the motion, the government called the principal arresting officer as a witness. His testimony, credited by the court, may be summarized as follows:

At approximately 2:45 on the morning of October 14, 1971, two uniformed police officers were patrolling in a marked scout car on Seventh Street, S.E. Seeing an automobile standing there with the engine running, the lights off, and the driver "slouched down" in the front seat, they drove over to the curb at an intersection approximately 30 to 40 feet ahead to watch developments. Less than a minute later another man emerged from a house in front of which the police car was parked. Upon seeing that car, he started to walk toward the automobile the police had noticed, keeping—as he passed them—his left arm stiff "as if he was holding something to his side . . . [he] was trying to hide." When he was about 10 feet from the automobile with the running motor, he placed something in his left coat pocket, and jumped into the passenger side. The automobile then pulled away and turned right at the intersection. The police immediately stopped it and summoned assistance.

When two other police cruisers arrived on the scene, the first two officers approached the car they had halted. One officer asked the driver, appellant Jeffreys, for his permit and registration. He produced a North Carolina permit, but no registration.[1] The officer had him step out. At the same time his fellow policeman, who was on the other side, ordered the passenger, appellant Thrower, from the car and conducted a pat-down search of his outer clothing, which disclosed a loaded .22 calibre pistol in his left coat pocket. Both appellants were taken to the rear of their car, where they were detained while

---

1. There was some dispute about this. Jeffreys testified that he told the officer the registration was on the windshield. The officer testified that he did not, and that only later did the police discover an expired registration taped to the windshield.

a transport vehicle was called. In the meantime, the first officer looked into the interior of the car. He found a bag containing crowbars, a screwdriver, sacks, and rubber gloves on the front seat. He then discovered a loaded .32 calibre revolver under the driver's seat.

Appellants' position is that (1) there was no probable cause to stop the car and search the occupants, and (2) even if the stop and frisk were lawful, the search of the car without a warrant was illegal. In our opinion neither contention is supported by the evidence presented at the motions hearing, for none of the challenged actions of the police officers was unreasonable.

■ In the first place, the sight of a parked car in a residential neighborhood almost three hours after midnight with its headlights turned off and its motor running, was in itself something which vigilant police officers could well have deemed suspicious—the circumstances suggesting the likelihood of a stealthy rendezvous and a quick getaway. At this point, the police would have been warranted in inquiring of the driver his identity and his business there. *See* Lucas v. United States, D.C. App., 256 A.2d 574 (1969). The officers, however, did nothing more at that time than to put the unlighted car under observation.

In any event, the behavior of the other party to the suspected rendezvous when he became aware of police surveillance provided additional grounds for suspecting that a criminal enterprise was about to unfold. We refer to the evidence concerning appellant Thrower's attempt to hide something he was carrying. While the officer testifying at the motions hearing may not have characterized the conduct by which the concealment was effected in the most apt fashion, we think that his description of what he saw would lead most people to infer that appellant Thrower was trying surreptitiously to hide some illegal article. *See* McGee v. United States, D.C.App., 270 A.2d 348 (1970).

Nor do we deem it farfetched for the officer, when he saw the rendezvous accomplished, to think that the object concealed was probably a weapon. The witness, a policeman with four years of experience, had made 24 weapons arrests in the previous year, including two under almost identical circumstances. In short, the circumstances here, like those in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), confronted the police with "unusual conduct which [led them] reasonably to conclude in light of [their] experience that criminal activity [might] be afoot and that the persons with whom [they were] dealing [might] be armed and presently dangerous. . . ." Terry v. Ohio, *supra* at 30, 88 S.Ct. at 1884. *See* Gaskins v. United States, D.C.App., 262 A.2d 810 (1970); United States v. Frye, D.C.App., 271 A.2d 788 (1970).

It is plain that the right of the police to engage in a stop and frisk did not evaporate merely because they deferred such action until the Jeffreys car started to go. It will be recalled that the officer in *Terry* did not accost the men he had been watching until they had left the place where their suspicious conduct had attracted his attention. *See also* United States v. Frye, *supra*. Significantly, in this instance, the Jeffreys car had proceeded only a block when the police officers stopped it. Their conduct in calling for reinforcements before approaching the occupants of that car indicates that their subsequent conduct was prompted by a genuine apprehension that appellant Thrower was armed and dangerous.

Appellants, however, argue that the stopping of the car was a mere pretext, because the arresting officer first asked the driver, appellant Jeffreys, for his permit and registration before saying anything to the passenger. We find nothing wrong with that. Request for the production of such papers is conventional police procedure in stopping a car for any reason. Moreover, the punctilio contemplated by *Terry,* absent exigent circumstances, is a

stop, preliminary questioning, and then, if warranted, a limited search.

In a recent decision, this court stated that the factors to be considered in determining the reasonability of police conduct in a stop and frisk situation are: "(1) the particular activity of the person stopped for questioning which the investigating officer has observed, (2) that officer's knowledge about (a) the activity and the person observed and/or (b) the area in which the activity is taking place, and (3) the immediate reaction or response of the person approached and questioned by the officer." [Footnote omitted.] Stephenson v. United States, D.C.App., 296 A.2d 606, 609 (1972).

Having considered the facts of this case in light of these criteria, we are satisfied that the action of the police in stopping the Jeffreys car and frisking appellant Thrower was reasonable and justified. Once they discovered a concealed weapon on his person, the police had probable cause to arrest him. D.C.Code 1973, § 23–581. Finding the actions of the police officers unexceptionable under *Terry* standards, we have no occasion to consider the question of probable cause, prior to the time the first pistol was found.[2] In short, as the court observed in United States v. Frye, *supra* 271 A.2d at 790, "[w]e have here another of those moving street scenes where quick, reasonable action by the police is necessary else events will pass them by with the result, perhaps, of another crime committed which could have been prevented[3] or solved." [Footnote inserted.]

■ On behalf of appellant Jeffreys, the argument is also made that irrespective of the legality of the flagging down of his automobile and the subsequent pat-down of his passenger, the second gun, with possession of which he was charged, should have been suppressed as this weapon was brought to light only by a warrantless search of the interior of the car—a procedure which the police had no right to undertake. Tacitly recognizing that in certain situations, warrantless searches of motor vehicles are justified, this appellant contends that because the second pistol was not within the plain view of the officers (*see* Ker v. California, 374 U.S. 23, 83 S. Ct. 1623, 10 L.Ed.2d 726 (1963)), the mere fact that Thrower was discovered to be armed did not provide probable cause to believe that the automobile contained another weapon.

This thesis fails to take into account the chain of events preceding the search in this particular case. We have already alluded to the fact that a standing car with a running engine and its lights off might well have stirred suspicion on the part of a passing police patrol, for plainly one purpose of the driver in handling his car in this way could have been to avoid awakening neighbors by starting a motor in the middle of the night, thereby permitting them to observe and identify in the beams of the headlights the person for whom he was waiting. When the latter, picked up by obvious prearrangement, turned out to be a man with a concealed handgun in his pocket, the police at this point of discovery had good reason to believe that the driver was an accomplice in some contemplated undercover project like a burglary, a robbery, or an armed assault. Under such circumstances, it was not unreasonable to infer that a search of the vehicle might uncover more weapons, burglars' tools,[4] or some other incriminating articles. Conse-

2. At that point, it does not appear that appellant Jeffreys was under arrest at all. It is unclear from the record whether or not he was frisked, but if he was, nothing was found.

3. Appellant Thrower told one of the officers that he had been in a fight at a party, had gone home to get his pistol, and was returning to seek revenge, when arrested.

4. Although the items found in the front seat would seem to fall into the category of such tools, neither appellant was charged with the misdemeanor of possessing implements of a crime.

quently, we conclude that the reasoning set forth in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and United States v. Free, 141 U.S.App.D. C. 198, 437 F.2d 631 (1970), for upholding warrantless searches of automobiles is dispositive of the issue appellant has raised.

It is true that in those cases the police, prior to searching the vehicles in question, had received reports linking such vehicles to crimes that had recently occurred, but the *Chambers* holding on the propriety of warrantless searches of automobiles is not limited to situations where the police are looking for the perpetrators of a reported crime. *See* Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

We are not dealing here with the detention and search of an automobile for an arrest based on a seeming traffic violation, *cf.* Tyler v. United States, D.C.App., 302 A.2d 748 (1973); Watts v. United States, D.C.App., 297 A.2d 790 (1972), but as an incident of arrest for an offense suggestive of the potentiality of the commission of a more serious crime. *See* Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L. Ed.2d 685 (1969). The surreptitious nature of the meeting, combined with the discovery of the pistol, furnished probable cause to infer that some joint criminal enterprise was planned. *Cf.* Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L. Ed.2d 612 (1972) (where fruits of a justified search, *i. e.,* a handgun, were considered in formulating probable cause for a search uncovering another gun). The search of the car, therefore, prompted by the likelihood that it would uncover the instrumentalities of such projected crime, cannot be deemed unreasonable.

Affirmed.

PAIR, Associate Judge (concurring in part and dissenting in part):

I concur in upholding the conviction of appellant Thrower. While the case is a close one, I am compelled to dissent as to the Jeffreys'. conviction. The intrusion into the automobile and into the bag observed on the front seat, the exploratory search of the automobile, and the seizure of the pistol from beneath its front seat were, in my opinion, unreasonable and without justification on any theory of probable cause.