UNITED STATES, Appellant,

v.

William F. WILKERSON, Appellee.

No. 8815.

District of Columbia Court of Appeals.

Argued April 9, 1975.

Decided May 30, 1975.

**442**

David E. Wilson, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Michael H. Gertner and Jonathan B. Marks, Asst. U. S. Attys., were on the brief, for appellant.

Alfred M. Schwartz, Washington, D. C., for appellee.

1. D.C.Code 1973, § 22-3204.

2. D.C.Pol.Reg. Art. 53, § 2.

Before GALLAGHER and NEBEKER, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

Appellee was charged with carrying a pistol without a license [1] and with the possession of ammunition not of the same caliber as the firearm described in the certificate of registration issued to him for such firearm.[2]

Claiming that the pistol and ammunition were fruits of a warrantless search of his automobile, appellee moved to suppress and it appearing that appellee was not under arrest at the time of the search and seizure, the court granted the motion. This appeal by the United States [3] followed. We reverse.

At the hearing on the motion to suppress, there was testimony in substance that on May 12, 1974, police officers responded to an apartment on a complaint of a disturbance involving a gun. The door to the apartment was opened partly by one Daniel Wilkerson who when asked whether anyone had called the police, replied "Nobody here called the police." The view into the apartment was partially obstructed by Daniel Wilkerson but the officers were able to see some distance behind him a woman later identified as his wife. Mrs. Wilkerson "appeared to be in a hysterical frame of mind" as she signaled to the officers that it was she who had called the police.

Mr. Wilkerson was removed from the doorway and one of the officers went into the apartment. Observing on and about the face and head of Mrs. Wilkerson what appeared to be fresh bruises and welts, the officer asked her what had happened. Mrs. Wilkerson stated that her husband had beaten her, had threatened to shoot her, and that she was "in fear of her life." She told the officer that she wanted her husband out of the apartment.

3. D.C.Code 1973, § 23-104.

Mr. Wilkerson was frisked but no gun was found on his person. However, the officer would not permit him to reenter the apartment, "because the gun had been mentioned, and we hadn't determined where the gun was." Mr. Wilkerson was then escorted to the street level by the other officers and released. The officer who remained inquired of Mrs. Wilkerson about the gun. She stated her belief that the gun was somewhere in the apartment, that she had seen her husband put it in various places, and that she wanted the police to remove it. The several places suggested by Mrs. Wilkerson were searched but no gun was found. The officer did find on the top of the refrigerator five rounds of .38 caliber police special ammunition.

Mrs. Wilkerson then said to the officer that since the gun was not in the apartment it must be in "the car." She described the car as a dark-colored Chevrolet Monte Carlo and advised the officer that "her husband and his friends in the past have passed the gun around between each other, . . . and if the gun wasn't in the house, it's being kept in the vehicle." After this conversation the officer left the apartment and joined the other police officers who in the meantime had returned to the police car parked at the front of the building. Observed parked some distance to the rear of the police car was a Chevrolet Monte Carlo answering the description given by Mrs. Wilkerson. Appellee was in the driver's seat and seated beside him was Daniel Wilkerson, his brother. In the rear of the automobile was a man who remained unidentified.

Concerned for their own safety, the officers decided that it would not be wise to approach the automobile from its front. Accordingly, it was agreed that two of the officers would drive away as though they were leaving the scene, proceed around the block and stop at the rear of the Monte Carlo. Almost immediately thereafter appellee got out of the automobile and with the permission of the officer who remained went into the apartment to obtain his brother's keys.

Upon return of the police car, Daniel Wilkerson and his companion were required to get out of the automobile and they were frisked but no gun was found on the person of either of them. The officers then searched the automobile and found under the driver's seat a pistol and under the passenger seat .38 caliber police special ammunition. In the glove compartment of the automobile was found shotgun ammunition.

One of the officers then returned to the apartment, advised appellee that a gun and ammunition had been found in the automobile, and placed him under arrest. Advised of his rights, including the right to remain silent, appellee nevertheless admitted ownership of the gun and produced a registration certificate for it saying that he had just come from a pistol range.

During the cross-examination of the police officer the court interrupted and inquired whether anyone was under arrest when the automobile was searched, after which the following transpired:

THE COURT: Wait a minute. You didn't have anybody under arrest at that time for anything, did you?

THE WITNESS: No, sir.

THE COURT: Just a minute. No one was under arrest at the time for any offense, is that correct?

* * * * * *

[THE PROSECUTOR]: That's correct, Your Honor.

THE COURT: And they searched the vehicle, even though no one was under arrest for any offense?

[THE PROSECUTOR]: Correct, Your Honor.

THE COURT: I think I've heard enough. . . .

\*    \*    \*    \*    \*    \*

. . . I will grant the motion.

The trial court no doubt was of the opinion that absent a custodial arrest of the appellee the police were not permitted to search his automobile without first obtaining a search warrant.

■ There are, however, well-established exceptions to the general rule which proscribes the warrantless search of an automobile. One such exception permits, under exigent circumstances, the warrantless search of an automobile on probable cause for a belief that secreted in the automobile is a weapon or destructible evidence subject to seizure. Chambers v. Maroney, 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). As the Court said in Carroll v. United States, 267 U.S. 132, 158–59, 45 S. Ct. 280, 287, 69 L.Ed. 543 (1925):

> The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law. . . .

*See also* Brinegar v. United States, 338 U. S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931). The sole issue presented, therefore, is whether on this record there was probable cause for a warrantless search of appellee's automobile. We hold that there was probable cause. The officers, called upon to investigate a disturbance involving a gun, observed a hysterical woman whose face and head evidenced recent assault. The officers were informed that the woman's husband had beaten her and threatened to shoot her. She stated that she was in fear of her life, and wanted both her husband and the gun removed from the apartment. The husband was frisked and the apartment was searched but no gun was found. Mrs. Wilkerson told the officer that since the gun was not in the apartment it must be in the automobile because she had seen her husband and his friends with the gun. Mrs. Wilkerson described accurately the automobile and the officers observed it parked near the entrance to the building. Seated in the automobile was Mrs. Wilkerson's husband and when he was again frisked, no gun was found on his person or the person of his companion who was also frisked. Thus, there remained only the automobile as the probable hiding place for the gun.

■ It was not required, of course, that the officers know of a certainty that the gun was in the automobile; it was enough that prior to the search, they had reason to believe that the gun was there. Thus it is of no consequence that the automobile was owned by appellee rather than the husband of Mrs. Wilkerson since our concern is with the existence of probable cause to search and seize rather than probable cause to arrest. Carroll v. United States, *supra.*

We conclude, therefore, that the need to search had a proper predicate in exigent circumstances, *i. e.,* (1) the officer's observations of Mrs. Wilkerson, the victim of the assault, (2) the information given the officer of threats to shoot her with a gun then believed to be secreted in the automobile, and (3) the accurate description of the automobile in which the husband of Mrs. Wilkerson was then seated. In Brinegar v. United States, *supra,* the Court explained that police officers in the discharge of their official duties are frequently confronted with situations requiring instant action based

> . . . on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for interests. Requiring more would unduly hamper law enforcement. . . .

[*Id.,* 338 U.S. at 176, 69 S.Ct. at 1311.]

445

See also Chambers v. Maroney, *supra*; Terrell v. United States, D.C.App., 294 A. 2d 860, 863 (1972); Hurley v. United States, D.C.App., 273 A.2d 840 (1971).

Reversed and remanded for further proceedings not inconsistent with this opinion.