**UNITED STATES, Appellant,**

v.

**Betty J. DAVIS, Appellee.**

**No. 12070.**

District of Columbia Court of Appeals.

Argued Dec. 15, 1977.

Decided June 2, 1978.

James F. Hibey, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Anthony T. Podesta, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellant.

James L. O'Dea III, Washington, D. C., appointed by this court, for appellee.

Before KERN, NEBEKER and YEAGLEY, Associate Judges.

KERN, Associate Judge:

The government appeals from the court's pretrial order suppressing four Preludin tablets the police had seized from a small change purse carried by appellee.[1] The seizure rested *entirely* upon a tip to police by an anonymous informant—an addict who had both a criminal record and a criminal charge pending against him. The trial court heard testimony on appellee's motion to suppress from (1) the officer who made the seizure and (2) the officer who received the tip. The court concluded that the prosecution failed to demonstrate the officers had grounds to deem the informant credible and hence they lacked probable cause to effect the seizure.

■ *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), provides that when the police rely solely upon an informant's tip as the basis for making an arrest or seizure, the court hearing the pretrial suppression motion must make two distinct findings in order to uphold the police action: (1) that the informant had direct knowledge of the information which he conveyed to the authorities, *i. e.,* that the informant's own perceptions led him to believe that criminal activity was occurring, and (2) that the informant had sufficient veracity so that the police acted reasonably in giving credence to his tip. The so-called veracity prong may be satisfied by the prosecution showing the judicial officer that either (a) the informant had a history of giving accurate information, or (b) the information he gave on this particular occasion, without regard to the informant's accuracy in the past, had special indicia of reliability (*e. g.,* where the police provide the informant—either by threat or promise of reward—with the incentive to tell the truth. *United States v. Carter,* 162 U.S. App.D.C. 132, 134, 498 F.2d 83, 85 (1974).) The precise language of *Aguilar* which dealt with an informant's tip about narcotics is:

> [T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was "credible" or his information "reliable." [378 U.S. at 114, 84 S.Ct. at 1514; citation omitted.][2]

---

1. Appellee was charged with possession of Preludin (phenmetrazine) in violation of the Dangerous Drug Act, D.C.Code 1973, § 33–702(a)(4); the government appeals from the grant of appellee's pretrial motion to suppress evidence pursuant to D.C.Code 1973, § 23–104(a)(1).

2. Although *Aguilar* and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), dealt with the sufficiency of an affidavit in support of a search warrant, the same (or at least no less stringent) probable cause standards apply to a warrantless arrest. *McCray v. Illinois,* 386 U.S. 300, 304, 87 S.Ct.

The record reflects that in the early evening of February 9, 1977, Sergeant Lawrence Ware of the Metropolitan Police Department received a telephone call from an informant who had previously given him information.[3] Sergeant Ware testified that:

> Source stated to me that there was a negro female, approximately 5'6", 130 pounds, medium-brown skin, that she had on a gold hat, wearing sunglasses, she had a brown jacket on with plaid front, that she had on red pants and bedroom shoes and that she was selling Bam [Preludin] and Dee [Dilaudid] from a small change purse, and that she was inside [a] store, on the corner of 10th and O Streets, N.W.

The informant indicated that he had seen the woman sell pills from her purse "shortly before" he called. Immediately, Sergeant Ware radioed the description and location of the woman to Officers Clarence J. Thomas and Wynn Mitchell, who proceeded to a carry-out restaurant at 11th and O Streets, and saw there a black woman matching the clothing description contained in the tip. Officer Thomas described what happened next:

> I responded directly to that subject fitting the description. I called her over to the side, identified myself, and I asked her what was in the change purse. She had a brown, small change purse in her hand. I looked in the change purse, and there were four pink tablets with marking BI–62 on same. I then identified the tablets as Preludin tablets, from prior narcotics experience. Subject was then placed under arrest.

It is clear from the record that the informant met the so-called "basis of knowledge" prong of *Aguilar*: that is, his basis for knowing that appellee "was selling Bam," and he asserted in his tip, was that he had seen appellee sell pills from her purse "shortly before." [4]

As to the so-called "veracity" prong of *Aguilar,* the trial court concluded the prosecution showing at the suppression hearing was deficient. The court correctly noted that the informant was an informer and addict and "[w]e somehow distinguish between the average citizen, who is presumed to be reliable, and a person we call an informant, who, I gather, doesn't enjoy that presumption but is in a different category from a citizen."

The trial court then found first that, without regard to the informant's past accuracy, there was on this occasion no indicia of the tip's trustworthiness since "this informant wasn't even paid" either by money or with some arrangement concerning the criminal case then pending against him. This finding by the trial court has support in the record which reflects that although

1056, 18 L.Ed.2d 62 (1967); *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Wong Sun v. United States,* 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *See Spinelli v. United States, supra,* 393 U.S. at 417 n.5, 89 S.Ct. 584; *Aguilar v. Texas, supra* at 311, 84 S.Ct. 1509.

3. At the suppression hearing Sergeant Ware testified that the informant, who was an addict, had talked to him *in the past* "about particular people selling drugs in the vicinity of 11th and O, particularly houses where the drugs had been *sold* from, *different houses where he* bought from, different people he bought from." He testified specifically that the source had given him tips which led to the arrest of one person on a charge of narcotics possession (a *case which at the time* of the suppression hearing was still pending before the Grand Jury), and at another time had provided information

which had been used as a *partial* basis for an affidavit in support of a search warrant.

4. The veracity of the informant's tip that appellee was selling "Bam" could not be established on this particular occasion by the observations of Officer Thomas *before he effected a seizure* of her purse since although he verified the accuracy of the *non-criminal* portions of the informant's tip, *viz.,* the sex, race, dress and location of appellee, he concededly did not observe her do anything even suggesting she was "selling Bam" as the informant had asserted in his tip. *Nance v. United States,* D.C.App., 377 A.2d 384 (1977); *Rushing v. United States,* D.C.App., 381 A.2d 252 (1977).

It is important to note that the tip in the instant case was as to the possession of narcotics, not a weapon. *See Adams v. Williams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

there was a case pending against him at the time of his tip to Sergeant Ware, he had received no promise of aid in exchange for information; indeed, the Sergeant did not even know whether appellant was then on parole or probation.

The court, upon turning to informant's "track record" of past accuracy when providing information to the police, noted that he had "never provided information to the police department which has resulted in any conviction of anyone." As to his past dealing with the informant, Sergeant Ware had testified:

> The source, at one time previous, gave me information which led to the arrest of one perpetrator, possession of drugs. That case is still pending within the court system [before the Grand Jury].

Sergeant Ware also testified concerning use he had made of information from the informant:

> Part of the information [about particular people selling drugs at 11th and O Streets, N.W.] was used as the support of affidavit for a search warrant. That, along with other information.

It may be seen from the record that Sergeant Ware nowhere asserted that the information given by the informant on either of the two prior occasions turned out to have been true. He also failed to indicate in his testimony whether on the occasion he had used "part" of the informant's information in an affidavit for a search warrant, the judicial officer had ever issued the particular warrant sought.[5] On the other occasion in which the informant had furnished information to the officer, we note that the officer did not even assert the tip had been accurate but only that it "led to the arrest of one perpetrator." The perpetrator, according to the officer, was awaiting Grand Jury action.

■ The motions judge here concluded the veracity prong of *Aguilar* had not been met because the informant's tip had *not* led to a conviction; however, we believe it would be error for a trial judge or other judicial officer to adopt a hard and fast rule that the veracity prong of *Aguilar* could be met *only* by the prosecution showing an informant's prior tip had led to a conviction. As Judge Moylan reminds us in his thoughtful article on the law concerning informant's tips, Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer,* 25 Mercer L.Rev. 741 (1974):

> The question is whether the magistrate has been furnished enough meaningful detail to make his own informed judgment on the issue of an anonymous informant's truthfulness, not whether arrests and/or convictions were somehow involved in the case.

■ In sum, the long-established rule in *Aguilar* requires that the prosecution must make a showing of the informant's veracity to support his tip by demonstrating the *accuracy* of his information in the past.[6] On the record here, the government did not do so and we cannot say the trial court erred in concluding the tip is "not reliable enough." Hence we must affirm its suppression order.

*So ordered.*

---

5. Contrast the prosecution showing in *United States v. Malcolm,* D.C.App., 331 A.2d 329 (1975), where the informant's prior tips had produced the issuance of search warrants.

6. As we pointed out recently in *Nance v. United States, supra* :

We assume that had the government been fully cognizant of its responsibility under the Supreme Court's mandate in *Aguilar,* as explained in *Spinelli,* it could and would have elicited the necessary facts and circumstances here with but a question or two more of its witnesses. [*Id.* at 390.]