Richardean HENIGHAN, Appellant,

v.

UNITED STATES, Appellee.

No. 80–169.

District of Columbia Court of Appeals.

Argued Nov. 12, 1980.

Decided June 10, 1981.

Linda Jacobson, Public Defender Service, Washington, D. C., with whom Silas J. Wasserstrom, Public Defender Service, Washington, D. C., was on the brief, for appellant.

Ronald Dixon, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and Michael W. Farrell, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEBEKER, HARRIS and PRYOR, Associate Judges.

NEBEKER, Associate Judge:

Following a suppression hearing, appellant was convicted in a stipulated trial before the court of carrying a pistol without a license, D.C.Code 1973, § 22–3204, and was placed on probation for three years after receiving a twelve-month suspended sentence. She appeals on the grounds that her motion to suppress the pistol was improperly denied. We affirm.

In the early morning hours of June 7, 1979, two officers in a patrol car answered a radio run asking for two cars to respond to the 1700 block of 14th Street, N.W., for a woman with a gun. The radio communication described the woman as a tall, black female wearing an orange shirt, white blouse, blue pants, and carrying a blue bag in which were a gun and narcotics. This information was obtained from an anonymous phone caller. The officers were two blocks away from the location and responded to the scene within twenty seconds where they identified the woman standing in a crowd. They observed her walk into a nightclub, followed by two other officers. She emerged fifteen seconds later at which time the officers alighted from their vehicle and confronted her in the middle of 14th Street. They each took hold of an arm and one then removed the blue bag from her shoulder. He passed the bag to his partner who looked inside to discover a Savage .32 caliber automatic pistol. There were no narcotics in the bag. They then placed appellant under arrest.

Appellant urges reversal on the grounds that the arrest was without probable cause and the subsequent search of the blue bag violated her reasonable expectation of privacy.

While many cases of police conduct may clearly be resolved either on a theory that there was or was not offense probable cause or on a theory that there were or were not articulable facts justifying a stop and protective frisk, some cases permit an alternative analysis. We think this is such a case, for under the facts one cannot, with stopwatch precision, say whether this police reaction must be supported by offense probable cause or merely by warnings of a specific ongoing offense. Accordingly, we decline the implicit invitation of the appellant to treat this police conduct solely as an arrest which must be based on probable cause. To distinguish the precise moment of arrest from the less intrusive incidents of a stop and frisk would be misleading to law enforcement. It would also instill unwarranted rigidity in judicial review of police conduct under the necessarily plastic concept of what is reasonable under the circumstances. Therefore, we analyze the facts of this case and apply the relevant case law with a view toward determining the reasonableness of the police response in terms of both an arrest and a protective frisk.

In some circumstances, in contrast to the approach we adopt here, determination of the exact moment of arrest is important. *See Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959) (arrest must be valid at moment of arrest to justify a search incident to arrest); *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) (arraignment must take place as quickly as possible after arrest and without delay to facilitate interrogation); *Fuller v. United States*, 132 U.S.App.D.C. 264, 271–72, 407 F.2d 1199, 1206–07 (1968), cert. denied, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969) (*Mallory* issue); *Bailey v. United States*, 128 U.S.App.D.C. 354, 389 F.2d 305 (1967) (search incident to arrest); *Coleman v. United States*, 111 U.S.App.D.C. 210, 295 F.2d 555 (1961), cert. denied, 369

U.S. 813, 82 S.Ct. 689, 7 L.Ed.2d 613 (1962) (felony murder conviction upheld provided that arrest did not conclude the felony prior to the murder).

■ Since *Terry v. Ohio*, 329 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), however, determination of the moment of arrest is often an unnecessary exclusion. Where the police must respond rapidly to an ongoing situation which provides little opportunity for reflection, events blur together in terms of motivation and justification. Under such circumstances, the courts must abandon the antiquated test of whether the suspect reasonably believed he was under arrest, *see Henry, supra,* and focus instead on a unitary analysis of whether the police acted reasonably under all the circumstances. *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The propriety of their conduct is measured not by its classification as an arrest, a stop and frisk, or an investigatory stop. It is measured by the reasonableness under the particular circumstances of the case. Otherwise, the courts will be dictating specific police procedures rather than permitting the police to employ what tactics might be reasonable under the circumstances. The judicial imagination is incapable of anticipating the myriad circumstances of police-citizen confrontations and the appropriate responses thereto. Precedential case law is a guide, not a police manual.

Though judges may disagree in upholding particular police conduct as to whether it is an arrest or a stop and frisk, they must at the same time be agreed on one thing—the reasonableness of the response. Thus, an alternative approach is often justified.

I

In their briefs and at oral argument, the appellant and the government argued the precedential value of several cases from this jurisdiction, none of which, predictably, is identical even in essential elements. Implicit in this approach to Fourth Amendment issues is the argument that prior cases of factual similarity guarantee a *stare decisis* quality binding the court in the matter at hand. This approach is wrong, reflecting a narrow vision of the Fourth Amendment which—over time—necessarily and inevitably constricts the limits of permissible police conduct to a point where only very formalistic and artificial responses will be permitted under the Constitution.

In only one significant Supreme Court decision have two cases been sufficiently alike that the first obtains a binding effect on the second. *See Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). In that case, the Supreme Court accepted this identity proposition in reversing the decision of the Tenth Circuit. The Tenth Circuit Court of Appeals had overturned a conviction on the grounds that the federal agents making the arrest had lacked probable cause to stop and search; however, the circuit court did so without reference to the prior decision of the Supreme Court in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), which the Supreme Court later considered "almost exactly on point." *Brinegar, supra,* 338 U.S. at 165, 69 S.Ct. at 1305. In addition, neither counsel in argument before the Supreme Court had discussed the application of *Carroll.* Clearly, the Supreme Court's acceptance of the binding factual nature of *Carroll* was necessitated by the failure of the Tenth Circuit to apply that decision.

This court has expressly rejected the idea that prior cases establish a factual precedent for the finding of probable cause. *Price v. United States,* D.C.App., 429 A.2d 514 at 518–519 (1981); *Tobias v. United States,* D.C.App., 375 A.2d 491, 493 (1977); *Arrington v. United States,* D.C.App., 311 A.2d 838, 839–40 (1973). No doubt, similar cases are instructive. But courts must always return, in the first instance, to the reasonableness standard of the Fourth Amendment—whether the facts and circumstances known to the officer and of which he had reasonably reliable information are sufficient to warrant a reasonable person in responding as the officer did. Factual similarity is not the test.

## II

Although each case requires the application of the Fourth Amendment standard to the facts at hand, we are not without guidance. The Supreme Court has decided specific cases arising under the Fourth Amendment which dealt with particular elements of police-citizen confrontation. In an attempt to manage the plasticity of reasonableness and probable cause, the Court—to the extent humanly possible—has mechanized the principles of human reason into formulae which should guarantee uniform application of the Fourth Amendment in cases where these elements appear. This case presents three elements of police-citizen confrontation which have always pressed the judicial system to its analytical limits in applying the Fourth Amendment. For each of these elements, the Supreme Court has established a framework for principled decision-making which we must apply at the outset. The ultimate controlling elements in this case are: police response to an anonymous tip; a report that a citizen is in possession of contraband (here, a potentially death-dealing weapon); and, a police on-the-street decision immediately to search the suspect.

The Supreme Court has addressed all three of these elements. Where police obtain information from a citizen informant, the reasonableness of their subsequent response is examined under the rubric of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The informant's communication must meet the tests of reliability and veracity set out in that case. Intervening decisions of this court are merely instructive in the analysis and illustrative of the application of the principles enunciated in *Aguilar*.

Subsequent to that case, the Supreme Court clarified the *Aguilar* test under circumstances in which probable cause could not adequately be supported by the tip alone. In those circumstances, the Court held that the insufficiency may be remedied by independent corroboration of the details in the tip. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). These sometimes porous tests of reliability are applicable in this case.* *See also Whiteley v. Warden of the Wyoming Penitentiary*, 401 U.S. 560, 567, 91 S.Ct. 1031, 1036, 28 L.Ed.2d 306 (1971); *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

The second element of this case, however, also influences judicial determination of the constitutionality of police conduct. Where the police have cause to know that a person has a gun, reason dictates that the highest duty of the officer is that of self-preservation. The Supreme Court has also spoken on this, confirming the officer's entitlement to act for his own protection where specific circumstances create a reasonable belief that the suspect may be armed. *Terry v. Ohio, supra,* 329 U.S. at 29, 88 S.Ct. at 1884. In constitutional terms, however, this degree of reasonable suspicion need not rise to that required for probable cause to arrest. The Court has observed that the fine line between "articulable suspicion" (the language used by Justice Harlan in his concurrence) permitting a frisk for weapons and circumstances constituting probable cause for arrest is a meandering one. *See Brinegar, supra,* 338 U.S. at 176, 69 S.Ct. at 1311; *see also United States v. Cortez, supra* at 695. ("Terms like 'articulable reasons' and 'founded suspicion' are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise"); *Carey v. United States,* D.C. App., 377 A.2d 40, 49 n.5 (1972) (Mack, J., dissenting). Nevertheless, the officer's response is always judged by the same standard—whether the facts and circumstances known to the officer and of which he had reasonably reliable information were sufficient to warrant a reasonable person in making that response. *Terry v. Ohio, supra,* 329 U.S. at 21–22, 88 S.Ct. at 1879–1880; *United States v. Cortez, supra* at 695.

---

* These two cases involve unrevealed government informants whose information formed the basis for warrants. Despite the fact that the informant here is truly anonymous and the arrest was made without a warrant, we continue to apply the so-called *Aquilar-Spinelli* test as we have in the past to both arrests and investigatory stops.

Inevitably, these two elements—an informant's tip that a person has a gun—appeared together in one case, *Adams v. Williams, supra.* This case led to the conclusion that one could frisk a suspect based on an informant's tip which raised a fear of the immediate dangerousness of the suspect—although such information could not then constitute probable cause for arrest—and that the officer in that frisk could discover the weapon, providing him at that point with probable cause to arrest.

All three elements examined by the Supreme Court are present in this case. Therefore, the controlling law is clear. The Supreme Court cases establish the analytical process which this court must follow in determining the reliability of the information and the reasonableness of the police response. We begin this process, however, first by assuming that the question is whether offense probable cause existed to justify an arrest and incidental search. Much of what we say in this regard, before treating the case as one involving a stop and protective frisk, has equal applicability to that analytical approach, for as we have seen from *Terry v. Ohio,* the bottom line for either type of police reaction is the same—objective reasonableness under the circumstances.

### III

█ As an arrest, the police conduct must be justified by circumstances sufficient to trigger the duty to arrest, circumstances establishing probable cause as to an offense.

Our job is not to criticize the police for their choice of response in a particular situation, but to determine whether the choice actually made is permissible under the Fourth Amendment. *Carey v. United States, supra* at 44–47; *Crawford v. United States,* D.C.App., 369 A.2d 595, 600–01 (1977); *Arrington v. United States, supra* at 830–40; *Bailey v. United States,* D.C. App., 279 A.2d 508, 510 (1971) ("The law . . . is clear that in such a situation as this the tactical choice by the police between apparent alternative courses of action can-

not be overturned by detached judicial deliberation as long as the course of action taken is in itself reasonable"). Upon the threshold of our decision, therefore, it is well to remember the first principles of the Fourth Amendment used to judge police conduct in all cases.

Probable cause exists where "the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" [the response of the officer was reasonable]. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

These long-prevailing standards seek to safeguard citizens from rash and unreasonable interference with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice. [*Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879 (1949).] *See United States v. Cortez, supra* at 695.

█ We first examine under *Aguilar v. Texas, supra,* whether the anonymous tip received by the police contained sufficient indicia of reliability and veracity to constitute probable cause. The fact that the tip was received by telephone and transmitted through the communication network is of little concern because the court attributes to the arresting officer the knowledge of the institution that is communicated to him.

*Daniels v. United States*, 129 U.S.App.D.C. 250, 252, 393 F.2d 359, 361 (1968); *Waldron v. United States*, D.C.App., 370 A.2d 1372, 1373 (1977); *Carey v. United States, supra* at 45; *Lawson v. United States*, D.C.App., 360 A.2d 38, 40 (1976); *United States v. Cousar*, D.C.App., 349 A.2d 454, 455 (1975); *Carter v. United States*, D.C.App., 244 A.2d 483, 485 (1968).

■ Because of the anonymity of the informant, his reliability and veracity cannot be directly confirmed. However, this court has held that an anonymous informant's reliability and veracity may be inferred from other circumstances. *Rushing v. United States*, D.C.App., 381 A.2d 252, 255 (1978); *Galloway v. United States*, D.C. App., 326 A.2d 803 (1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). *See also Brown v. United States*, 125 U.S.App.D.C. 43, 365 F.2d 976 (1966). A citizen's report is inherently more reliable than information supplied by a paid police informant, *Lawson, supra* at 39–40, and where the report was anonymous, we have permitted an inference from the circumstances that the caller was in fact an eyewitness citizen. *Rushing, supra* at 255; *Galloway, supra*. This analysis is derived from the Supreme Court's approach to an anonymous informant's tip which is corroborated by other evidence, *Spinelli, supra*, and, therefore, is justified constitutionally. Where the call is contemporaneous with the police confirmation of the report, *see Lawson, supra* at 40, and reports a rapidly moving street occurrence involving contraband, it is reasonable to conclude that the citizen informant has eyewitness reliability.

■ But we need not rest on an inferential finding of reliability in the reported information. Even if the informant's tip is not sufficient to establish offense probable cause, information gathered by the arresting officer can be used to remedy the insufficiency. *Whiteley v. Warden of the Wyoming Penitentiary, supra* 401 U.S. at 567, 91 S.Ct. at 1036; *Spinelli v. United States, supra* 393 U.S. at 423, 89 S.Ct. at 592; *Draper v. United States, supra*. In this case, we find that the police had probable

cause to believe that appellant was in unlawful possession of a gun because the tip was probably from a citizen-eyewitness reporting a person at large with a gun and was contemporaneously confirmed by the police observation of the details provided in the tip within seconds of the radio run. *See also Mitchell v. United States*, D.C.App., 368 A.2d 514 (1977).

■ The nature of the reported criminal activity itself is also an important factor to be weighed in the Fourth Amendment balance. Reliable information that the suspect is in possession of contraband under these circumstances universally justifies the arrest and search. *Whiteley, supra; Carey, supra; Galloway, supra*. Information that the contraband is a concealed weapon may justify an even swifter intrusion on the rights of a citizen than in other circumstances. See LaFave, *"Street Encounters" and the Constitution: Terry, Sibron, Peters and Beyond*, 67 Mich.L.Rev. 40, 58 (1968).

IV

Appellant points out that in prior cases it seems that our court has limited this basis for confirming the reliability and veracity of an informant's information. The sufficiency of reliability established in part by the exigencies of a rapidly moving street occurrence has been criticized. It has been said that probable cause is only "tenuously" satisfied when based on the need for speedy police conduct and that when a gun is not involved, the test for probable cause must be more "stringent." *Rushing, supra* at 255–56; *Nance v. United States*, D.C.App., 377 A.2d 384 (1977). Appellant argues that there is no element in this case necessitating a rapid response by the police and permitting the court to apply a "less stringent" standard on which to justify the response. Appellant points out that the cases utilizing this factor involve the possibility of flight in automobiles. *See Galloway, supra*.

We must repeat that case-matching to determine the reasonableness of the police response is a wholly improper method for deciding Fourth Amendment issues. *See*

*Brinegar, supra.* The intonation of "rapidly moving street occurrence" from *Galloway* does not establish an alternative method for examining offense probable cause. Furthermore, offense probable cause is not a floating standard which is met tenuously in one case and strongly in another. Such earlier characterizations seem more to spring from reluctance to uphold a police response than from an effort to quantify the needed basis. *See also Cortez, supra* at 695.

■ In this case, the police confirmed the informant's report in detail, observing appellant in a crowd on a street in a high narcotics area on a summer night with many persons about. Though we eschew case-matching, we must note that the fast-moving nature of the events in *Galloway* is also present here, buttressed by the nature of the supplied information. Rapidity of the events, while perhaps justifying a *Terry* stop, is merely another factor in the determination of reasonableness under the general analytical rubric established by *Aguilar, Draper, Spinelli,* and *Whiteley.* This is not—as appellant contends—a novel, contrived, or watered-down probable cause doctrine. It is a common sense application of the unitary, analytical principle—whether from the facts and circumstances, their own experience, and reasonably trustworthy information, the response of the police was reasonable to one of ordinary caution. This is always the test to be applied by the courts, whichever response the police may choose.

### V

Appellant further contends that while an officer's independent corroboration of a tip may sometimes compensate for an inadequate showing of the tipster's reliability, corroboration of innocent detail alone is insufficient. *See Rutledge v. United States,* D.C.App., 392 A.2d 1062, 1066 (1978); *United States v. Davis,* D.C.App., 387 A.2d 1091, 1093 n.4 (1978); *Rushing, supra; Nance, supra* at 389; *Mitchell, supra; see also District of Columbia v. M.E.K.,* D.C.App., 407 A.2d 655 (1979); *United States v. Malcolm,* D.C.App., 331 A.2d 329 (1975). To be sure, these cases indicate that where the veracity of the informant's tip is confirmed by police corroboration of detail in the tip, that detail must reflect criminal conduct and not merely innocuous behavior. It is true that the details of appellant's clothing, the location where she would be found, the blue bag, and her walking into the nightclub did not, in themselves, manifest criminal behavior. The only information which the officer did not corroborate was the possession of the gun and narcotics.

Those cases which require corroboration of criminal or sinister circumstances are confined to paid or otherwise "employed" narcotics informants furnishing information about possession or transfer of such contraband. Such corroboration of citizen-supplied tips has not been required. *United States v. Walker,* D.C.App., 294 A.2d 376 (1972), *cert. denied,* 414 U.S. 1007, 94 S.Ct. 368, 38 L.Ed.2d 245 (1973). We deem controlling the Supreme Court's analysis in another instance that "surely, with every other bit of (the) information being thus personally verified," the officer "had 'reasonable grounds' to believe that the remaining unverified bit ... was likewise true," *Draper, supra* 358 U.S. at 313, 79 S.Ct. at 333. It might be noted that *Draper* was also a case of a paid narcotics informant and the Court did not require other than innocent corroborative observations. The *Rutledge, Rushing* and *Nance* line of cases poses a question whether by requiring a sinister quality in the corroboration we have not gone beyond permissible constitutional strictures. *Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975).

■ We hold that in this case, the facts known to the police officer justified the officer's response. The police were not required to await some conduct of the suspect which would confirm their suspicion that she was in possession of a gun because such conduct was likely to constitute a grave hazard such as an assault, a robbery, or a murder. *See Crawford, supra,* in which the police essentially lied to a suspect in order to make their arrest less dangerous. The

situation is quite different from that in which the police wait to observe evidence of the use, possession, or sale of narcotics. Such exhibitions are not of immediate danger to the citizenry or the police. We have often upheld peremptory conduct by the police where a gun was involved. *See, e. g., Lawson, supra; United States v. Wilkerson,* D.C.App., 338 A.2d 441 (1975); *Savage v. United States,* D.C.App., 313 A.2d 880 (1974); *Galloway, supra; Murphy v. United States,* D.C.App., 293 A.2d 849 (1972); *Gaskins v. United States,* D.C.App., 262 A.2d 810 (1970); *Cox v. United States,* D.C.App., 256 A.2d 917 (1969); *Carter, supra.*

■ Finally, appellant contends that her blue bag constitutes "personal luggage" within the meaning of *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) and *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), and when once reduced to the exclusive control of the police, may not have been opened without a search warrant. We do not read these cases and others which followed them to compel the police to remove the subject and the bag to the police station and then obtain a warrant before opening the bag. The on-street search is more akin to one incident to an arrest. Furthermore, where an arrest is based on probable cause, such a search may be beneficial to the accused in immediately establishing the baselessness of the charges. *See United States v. Washington,* 144 U.S.App. D.C. 338, 341–42, 447 F.2d 308, 311–12 (1970); *Russell v. United States,* 133 U.S. App.D.C. 77, 80–81, 408 F.2d 1280, 1283–84, *cert. denied,* 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969); *Adams v. United States,* 130 U.S.App.D.C. 203, 208, 399 F.2d 574, 579 (1968), *cert. denied,* 393 U.S. 1067, 89 S.Ct. 722, 21 L.Ed.2d 710 (1969) (Burger, J., concurring); *Payne v. United States,* 111 U.S.App.D.C. 94, 98, 294 F.2d 723, 727 (1961).

What has been said in the preceding pages also applies in the main to a determination whether a stop and protective frisk was reasonable. If the appellant in this case had been a man and the report was that the gun was in his waistband, affirmance with a simple citation to *Adams v. Williams, supra,* would suffice, for the cases in all essential elements would be the same. To be sure, the different manner of attire between men and women may be relevant. The gun in the man's belt permissibly was seized without offense probable cause in *Adams v. Williams.* The gravamen of that holding was that reaching for the gun in the waistband was justified as a protective frisk. We conclude under these circumstances that the alleged weapon-toting female with the gun in her handbag may not logically be insulated by her sex from the same kind of protective reaction by the police. Cursory inspection of appellant's handbag to determine presence of a reported gun is a far cry from the luggage and footlocker situations presented in *Arkansas v. Sanders, supra* and *United States v. Chadwick, supra* respectively. The particular circumstances of this case reveal no material distinction with the holding in *Adams v. Williams. See State v. Hasenbank,* 425 A.2d 1330 (Me.1981).

By our analysis, therefore, the police response was reasonable and transgressed no Fourth Amendment protection.

*Affirmed.*

PRYOR, Associate Judge, dissenting:

This case involves the police response to a citizen-caller in circumstances allegedly involving a weapon and illicit narcotics activity. Unlike the majority, I view the information available to the police as sufficient to warrant an investigatory stop, *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), but not rising to the level of probable cause so as to justify an arrest and subsequent full-fledged search as here.

An anonymous call reporting criminal activity, coupled with police observation of the suspect on the street, without more, generally does not satisfy the requirements of trustworthiness announced in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The police may, of

course, reach probable cause by additional observation or independent investigation. This, however, is not such a case. *See Rushing v. United States*, D.C.App., 381 A.2d 252 (1978).

Rather, we are here concerned with circumstances where investigation was appropriate and where there was an articulable factor of danger to the officers. In that event, the reason underlying a police intrusion is clear.

> The sole justification of the search ... is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer. [*Terry v. Ohio, supra*, 392 U.S. at 29, 88 S.Ct. at 1884.]

In *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1973), the officer, as here, was informed that a suspect at a given location possessed a gun and narcotics. The Court, utilizing the *Terry* rationale, approved the seizure of the weapon from the suspect's belt, where it was reported to be.

Similarly, in *Lawson v. United States*, D.C.App., 360 A.2d 38 (1976), an unidentified caller informed police that a described suspect at a particular location was carrying a gun in his pants pocket. Upon arrival, a frisk disclosed a weapon in the right-front trouser pocket of the suspect. We held the stop and frisk a reasonable intrusion under the circumstances.

In comparable situations, we have consistently approved a reasonable intrusion to neutralize possible danger. *United States v. Walker*, D.C.App., 294 A.2d 376 (1972); cf. *Galloway v. United States*, D.C.App., 326 A.2d 803 (1974); *United States v. Frye*, D.C.App., 271 A.2d 788 (1970). Thus, without "matching the facts" of each case, I believe there is a substantial body of decision which has shown this kind of confrontation to be within the range of a *Terry* stop.

However, it is the nature of the intrusion on this instance which causes me to dissent.

The officers were two blocks away from the location and responded to the scene within twenty seconds where they identified the woman standing in a crowd. They observed her walk into a nightclub, followed by two officers. She emerged fifteen seconds later at which time the officers alighted from their vehicle and confronted her in the middle of 14th Street. They each took hold of an arm and one then removed the blue bag from her shoulder. He passed the bag to his partner who looked inside to discover a Savage .32 caliber automatic pistol. [Majority op. at 1060.]

It is difficult to characterize this seizure as limited to the scope of a protective purpose. In *Adams v. Williams, supra*, the suspect was disarmed when the gun was taken from his belt. In this instance, the source of likely danger was removed when appellant's handbag was taken from her. That was a reasonable precaution under *Terry*. However, approval of a full search of the purse, without additional information, allows the lesser showing required for a frisk to serve as a substitute for probable cause.

Even if we were to assume arguendo that probable cause existed, I doubt, given the facts and circumstances of this case, that the intrusion into appellant's purse was reasonable under the Fourth Amendment in light of *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and their progeny. The Supreme Court has repeatedly acknowledged the primary purpose of the Fourth Amendment to be the protection of legitimate expectations of personal privacy. *Arkansas v. Sanders, supra*, 442 U.S. at 757–58, 99 S.Ct. at 2589–2590; *United States v. Chadwick, supra*, 433 U.S. at 7, 11, 97 S.Ct. at 2481, 2483; *Katz v. United States*, 389 U.S. 347, 350–51, 88 S.Ct. 507, 510–511, 19 L.Ed.2d 576 (1967); *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886). Hence, the Court has often reiterated "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures, . . ." U.S. Const. Amend. IV, by interpreting that Amendment to provide that searches of personal property generally be performed pursuant to a validly issued warrant. *See, e. g., Arkansas v. Sanders, supra,* 442 U.S. at 758, 99 S.Ct. at 2589; *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978); *United States v. Chadwick, supra,* 433 U.S. at 9, 97 S.Ct. at 2482; *United States v. United States District Court,* 407 U.S. 297, 317, 92 S.Ct. 2125, 2136, 32 L.Ed.2d 752 (1972); *Katz v. United States, supra,* 389 U.S. at 357, 88 S.Ct. at 514; *Agnello v. United States,* 269 U.S. 20, 33, 46 S.Ct. 4, 6, 70 L.Ed. 145 (1925).

> The prominent place the warrant requirement is given in our decisions reflects the 'basic constitutional doctrine that individual freedoms will best be preserved through a separation of powers and division of functions among the different branches and levels of Government.' *United States v. United States District Court, supra,* [407 U.S.] at 317, [92 S.Ct. at 2136]. By requiring that conclusions concerning probable cause and the scope of a search 'be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime,' *Johnson v. United States,* 333 U.S. 10, 14, [68 S.Ct. 367, 369, 92 L.Ed. 436] (1948), we minimize the risk of unreasonable assertions of executive authority. [*Arkansas v. Sanders, supra,* 442 U.S. at 759, 99 S.Ct. at 2590 (citation and footnote omitted).]

There is no doubt that the Court has recognized the need for certain exceptions to the warrant requirement; the one relied upon by the majority involves a search incident to a valid arrest. However, the policy considerations underlying these exceptions must also be considered in weighing their applicability in any given case. Allowing a warrantless search of one's person incident to a custodial arrest, as well as the area immediately within his control, serves to protect the police and others from the dangers with which they may be confronted in effecting an arrest, in addition to preventing the loss or destruction of evidence. *United States v. Chadwick, supra,* 433 U.S. at 14–15, 97 S.Ct. at 2485–2486; *United States v. Robinson,* 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973); *United States v. United States District Court, supra,* 407 U.S. at 318, 92 S.Ct. at 2137; *Cupp v. Murphy,* 412 U.S. 291, 295, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900 (1973); *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–2040, 23 L.Ed.2d 685 (1969); *Agnello v. United States, supra* 269 U.S. at 30, 46 S.Ct. at 5. Thus, a balancing of the competing interests of danger to law enforcement officers or destruction of evidence against the need to protect one's legitimate expectation of privacy must always be undertaken. In the absence of any danger to the arresting officer or destruction of evidence, the Fourth Amendment warrant requirement remains paramount. *See United States v. Chadwick, supra:*

> Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their *exclusive* control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest. [*Id.* 433 U.S. at 15, 97 S.Ct. at 2485 (emphasis added; footnote omitted).]

In this instance, even if we assume the existence of probable cause, there is considerable authority, *Arkansas v. Sanders, supra* (unlocked suitcase); *United States v. Chadwick, supra* (footlockers); *United States v. Ross,* D.C. Cir., 655 F.2d 1159 (1981) (en banc) (paper bag and small leather pouch), that intrusion into the handbag under these circumstances was an unreasonable seizure.

Accordingly, I dissent.